**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 1:14CV116**

| | |
|---|---|
| KEVIN SCOTT DEL VECCHIO, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>)<br>**Defendant.** )<br>_____ ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on cross motions for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. (Docs. 8, 11).

**I. PROCEDURAL AND BACKGROUND FACTS**

Kevin Scott Del Vecchio filed for Title II Period of Disability and Disability Insurance Benefits ("DIB") on February 10, 2011. (Tr. 151-157, 202). Plaintiff also filed for Title XVI Supplementary Security Income Benefits ("SSI") on September 20, 2012. (Tr. 182-190). Plaintiff's Title II claim was denied initially and upon reconsideration. (Tr. 116-119, 122-125). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 130-132). Plaintiff, represented by an attorney, testified at a hearing held on September 20, 2012 before ALJ Gregory Wilson. A vocational expert ("VE") was also present at the hearing. Plaintiff's application for SSI escalated to the hearing level, and a second hearing was held before ALJ Wilson on March 14, 2013. (Tr. 104-115). In a decision dated June 21, 2013, the ALJ denied Plaintiff's applications for both DIB and SSI, ruling he was not disabled within the meaning of sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (Tr. 18). On March 6,

1

2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-5). Plaintiff brought this claim in September of 2014 under 42 U.S.C. §405(g).

Plaintiff was born in 1962 (Tr. 140), and has a high school education. (Tr. 73). Plaintiff's past relevant work includes stints as a mattress warehouse distribution manager, landscape laborer, trucker, and most recently, as a salesman at a bait shop and boat landing. (Tr. 96). Plaintiff last worked in September 2009. (Tr. 74). On March 10, 2010, Plaintiff was diagnosed by his treating physician, Jack Brunson, M.D., with lumbar back pain, chronic pain, and a herniated cervical disk. (Tr. 436). Plaintiff also had a history of degenerative disc disease. (Tr. 434).

On August 31, 2010, Plaintiff was evaluated by Martin Diamond, M.D., at Dr. Brunson's request. (Tr. 370). Dr. Diamond's examination revealed diminished range of motion in the neck, and the results of an EMG were consistent with early generalized neuropathy in the upper extremities. (Tr. 370-372). Plaintiff complained he was in "agony" when sitting and that he could not stand for very long. (Tr. 418).

On December 7, 2010, Plaintiff was examined by John Pilch, M.D. (Tr. 268). After taking X-rays, Dr. Pilch diagnosed diffuse pain syndrome, disc space narrowing in the lumbar spine, and disc degeneration in the cervical spine. (Tr. 269). Dr. Pilch further recommended an MRI of Plaintiff's lumbar spine. *Id.*

Plaintiff returned to Dr. Brunson on March 11, 2011, and completed a Spinal Impairment Questionnaire. Citing the results of the questionnaire, as well as MRI and EMG testing, Dr. Brunson opined that Plaintiff was able to sit less than 1 hour and stand/walk 1 hour total during an 8-hour workday. (Tr. 276). On September 13, 2011, based upon the results of a Lyme Disease

2

Impairment Questionnaire and lab testing, Dr. Brunson found evidence consistent with Lyme disease. (Tr. 327-328).

On August 8, 2011, Dr. Larry Korn examined Plaintiff at the behest of the Social Security Administration. (Tr. 297). Dr. Korn diagnosed Plaintiff with chronic pain syndrome and a positive Lyme disease antibody. (Tr. 299). Plaintiff's strength in both his shoulders and lower extremities received ratings of 5 out of 5. *Id.* Dr. Korn determined Plaintiff was limited "primarily by his subjective pain" with "no obvious findings" of permanent restrictions or limitations, but also thought further X-rays of Plaintiff's spine might be helpful. *Id.*

At the September 20, 2012 hearing before ALJ Wilson, the VE testified that someone limited to standing/walking six out of eight hours per day, and limited to sitting six out of eight hours per day, could not perform any of Plaintiff's past relevant work. (Tr. 96-97). The VE further testified that such an individual could work as a hand packager, an inspector, and an inventory checker. (Tr. 97). However, if an individual were subject to various other restrictions that Dr. Brunson identified as applying to Plaintiff, such as being limited to standing/walking for one hour and sitting for less than one hour in an eight-hour workday, that individual would not be able to perform any work. (Tr. 98).

At the initial hearing level, state agency physician Dale Van Slooten, M.D., determined Plaintiff should be limited to light work, capable of standing for six hours in an eight hour workday and sitting for six hours in an eight hour workday. (Tr. 287). Dr. Van Slooten found the severity of symptoms alleged by Plaintiff partially credible. (Tr. 291). At the reconsideration level, Samuel Chastain, M.D., arrived at the same conclusions as Dr. Van Slooten regarding Plaintiff's work limitations and symptom severity. (Tr. 318-324).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE ALJ's EVALUATION PROCESS

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.[1] 20 C.F.R. §§ 404.1520(a) and 416.920(a). If it is determined that a claimant is or is not disabled at a given step, the SSA or Administrative Law Judge ("ALJ") will issue a decision without proceeding to the next step in the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three has been completed, but before step four is begun, in order to determine what level of physical and mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

### IV. DISCUSSION

The issues on appeal are (1) whether, in light of the Fourth Circuit's ruling in *Mascio v. Colvin*, the ALJ properly evaluated Plaintiff's credibility; and (2) whether the ALJ's hypothetical to the vocational expert properly accounted for Plaintiff's mental limitations. 780 F. 3d 632 (4th

---

[1] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if claimant can adjust to perform other work, the SSA will find that claimant is not disabled at the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

Cir. 2015). The third (3) and final issue on appeal concerns whether the ALJ erred in his assignments of weight to medical opinions.

### 1.) The ALJ did not err in finding Plaintiff's assessment of his symptoms and limitations not wholly credible.

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. First, "there must be objective medical evidence showing the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996), *citing* 20 C.F.R. § 416.929(b); *and* § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). Second, if such evidence exists, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* At 595, *citing* 20 C.F.R. § 416.929(c)(1); *and* § 404.1529(c)(1).[2]

ALJ rulings often address plaintiff credibility via boilerplate language identical to that used by the ALJ in the instant case:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the pain, intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functioning capacity assessment.

(Tr. 24).

In *Mascio*, the Fourth Circuit joined a number of other circuit courts in holding that such boilerplate language "gets things backwards by implying that ability to work is determined first

---

[2]In analyzing a claimant's credibility, an ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) medication; (5) treatment other than medication; (6) other pain-relieving measures; and (7) other factors related to limitations and restrictions due to pain. *See* SSR 96-7p, 1996 WL 374186, at *3. However, an ALJ is not required to discuss each of the listed credibility factors in their opinion. *See Baggett v. Astrue*, No. 5:08-CV-165-D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009).

6

and is then used to determine [p]laintiff's credibility." *Mascio*, 780 F. 3d at 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)).

However, the use of boilerplate in assessing the credibility of plaintiffs is not necessarily fatal to an ALJ's decision, because "the ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Mascio*, 780 F. 3d at 639. In *Racey v. Astrue*, the ALJ sufficiently supplemented the use of "meaningless boilerplate" in his credibility determination by "specifically compar[ing] plaintiff's alleged symptoms to the results of her mental health assessments and treatment records and discuss[ing] the relatively normal findings, minimal treatment, . . . daily activities, and all the evidence from treating and consultative sources." No. 5:12CV00036, 2013 WL 589223, at *6 (W.D. Va. Feb. 13, 2013); *see also*, *Webb. v. Astrue*, No. 2:11CV00103, 2012 WL 3061522, at *16–17 (N.D.W.Va. July 26, 2012) ("although the ALJ may have used a 'template' to draft her decision, the substance of the decision itself supports the credibility determination.").

Here, although the ALJ employed boilerplate language in his credibility assessment, his error was harmless because he properly analyzed Plaintiff's credibility elsewhere in his opinion. The ALJ examined Plaintiff's alleged back and neck problems, Lyme disease, neuropathy, and mental impairments in turn, finding in each case that the objective medical evidence was either inconsistent with Plaintiff's allegations, or insufficient to support a finding of "disabled." (Tr. 25-26). Regarding Plaintiff's alleged back and neck problems, the ALJ noted that while Plaintiff was found to have lower back pain, neck pain, and decreased range of motion on some occasions, other examinations found nothing more than some tenderness. (Tr. 25). The ALJ further noted that Dr. Diamond's examination of Plaintiff on August 31, 2010 found no significant trigger points or focal weakness in the cervical or parascapular areas. (Tr. 25, 370).

Concerning Plaintiff's diagnoses of Lyme disease and idiopathic peripheral neuropathy by his treating physician, Dr. Brunson (Tr. 327), the ALJ noted that early neurological testing performed by Dr. Pilch was unclear, and that most of Dr. Brunson's treatment records of Plaintiff "are little more than medication refills and checkup meetings with little in the way of neurological findings." (Tr. 25). The ALJ took particular notice of Dr. Korn's August 2011 consultative exam, in which Plaintiff exhibited full 5/5 strength in both his shoulders and lower extremities. (Tr. 25-26, 298-299). Plaintiff contends that the ALJ wrongly ignored "the extensive abnormalities identified by the treating doctor." (Pl. Br. 17). An ALJ, however, "holds the discretion to give less weight to . . . a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).[3] In sum, the ALJ's adverse credibility assessment was supported by sufficient evidence. As a result, the ALJ's use of boilerplate language amounts to harmless error under *Mascio*, since he "properly analyzed credibility elsewhere." 780 F.3d at 639.

### 2.) **The ALJ's hypothetical to the vocational expert properly accounted for Plaintiff's mental limitations.**

Plaintiff argues that, in light of the Fourth Circuit's ruling in *Mascio*, the ALJ's hypothetical to the VE did not adequately account for Plaintiff's mental impairments, particularly his difficulties maintaining concentration, persistence, or pace. (Doc. 15; p. 3). In *Mascio*, the Fourth Circuit held that an ALJ's hypothetical to a vocational expert, which limited the plaintiff to unskilled work but said nothing about the claimant's mental impairments, was legally insufficient because it failed to properly account for the claimant's moderate limitations in concentration, persistence, or pace. 780 F.3d at 633. The Fourth Circuit stated that an "ALJ

---

[3] Plaintiff points out that the ALJ incorrectly stated that Plaintiff only stopped working when he could no longer pay his bills. (Pl. Br. 18; Tr. 25, 298). In fact, Plaintiff could no longer pay his bills because his health issues forced him to stop working. This error is also harmless, and not fatal to the ALJ's credibility determination.

8

does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). The court noted that "the ability to perform simple tasks is different from the ability to stay on task," and thus merely limiting the hypothetical to simple or unskilled work was insufficient. *Id.* at 638. Remand, however, is not automatically required when an ALJ fails to explicitly account for concentration, persistence, or pace limitations in their hypothetical to the VE. *See id.* For instance, "the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.*

In *Mascio*, remand was necessary because the ALJ provided no explanation at all regarding whether the claimant's limitations in concentration, persistence, or pace affected her RFC. *Id.* Here, the ALJ's decision makes clear that, in evaluating Plaintiff's mental impairments, he relied heavily upon the "lengthy, thorough, and detailed rationale" provided by non-examining state agency medical consultant Dr. Estock. (Tr. 30). In Dr. Estock's "Functional Capacity Assessment," he found that Plaintiff could "maintain attention sufficiently to complete simple, 1-to 2-step tasks for periods of at least [two] hours, without the need for . . . extra rest periods," and that Plaintiff "appears able to complete an 8-hour workday, provided all customary breaks from work are provided." (Tr. 317). Given that 'customary breaks' normally occur three times per day at approximately two hour intervals, Dr. Estock, and therefore the ALJ, is correct in opining that Plaintiff should be able to stay on task throughout an 8-hour workday, even with moderate limitations in concentration, persistence, or pace. *See Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D.N.C. April 16, 2012) ("Defendant correctly points to

9

Social Security Regulation ('SSR') 96–9p, which provides a guideline for customary breaks during a work-day as follows: '... a morning break, a lunch period, and an afternoon break at approximately 2–hour intervals.' Thus, customary breaks or 'normal breaks,' would reasonably occur approximately every two hours.") (quoting *Perkins v. Astrue*, No. EDCV 08-1383-OP, 2010 WL 375117, at *6-7 (C.D. Cal. Jan. 25, 2010))). Accordingly, no additional restrictions were required.

Here, unlike in *Mascio*, the ALJ discussed substantial record evidence in determining Plaintiff's mental RFC, and his explicit reliance on Dr. Estock's opinion adequately explains why Plaintiff's limitations in concentration, persistence, or pace did not translate into any additional restrictions in the ALJ's hypothetical to the VE. (Tr. 30). Therefore, the Court is not left to guess at the ALJ's decision-making process. *See Mascio*, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentrate, persistence, or pace does not translate into a limitation in Mascio's residual functional capacity."). Thus, Plaintiff's mental limitations were fully accounted for by a hypothetical restricting Plaintiff to simple 1- to 2-step tasks, and remand is not required on this issue.

### 3.) The ALJ did not err in his assignments of weight to medical opinions.

Plaintiff further contends that the ALJ erred in his assignments of weight to medical opinions by according little weight to the opinion of Plaintiff's treating physician, Dr. Brunson, while according great weight to the opinions of non-examining state agency medical consultants Drs. Van Slooten and Chastain. Regarding the weight given to Dr. Brunson, the Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not

inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d 171, 178 (4th Cir. 2001) (citing *Craig*, 76 F.3d 585, 590 (4th Cir. 1996). Moreover, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir.1999) (citation omitted).

Here, the ALJ found Dr. Brunson's opinion, and the "significant limitations" that he imposed on Plaintiff, to be inconsistent with Dr. Brunson's own examinations of Plaintiff, as well as the overall medical record. (Tr. 26-27). In his impairment questionnaires, Dr. Brunson indicated that his opinions were based on evidence of decreased lumbar forward flexion, muscle spasms in the lumbar spine, sensory loss in the right lower leg and foot, muscle atrophy of the left triceps, muscle weakness in the left arm and right leg, crepitus of the neck, multiple trigger points, and positive straight leg raising. (Tr. 273-74, 327).

As the ALJ correctly notes, the majority of Dr. Brunson's records involve filling and refilling prescriptions. (Tr. 25). The ALJ also noted that "Dr. Brunson's examinations revealed normal gait and station with moderately reduced range of motion." (Tr. 27, 406). The examinations also show that Plaintiff exhibited no bony spinal tenderness, was in no acute distress, and exhibited no more than moderate pain distress. (Tr. 406, 409, 435).

The ALJ also noted that Dr. Pilch reported normal gait and strength, with a negative straight leg raise. (TR. 27, 272). Further, in contrast to Dr. Brunson's opinion that Plaintiff could never lift more than ten pounds or carry more than five pounds, Dr. Korn's consultative

11

examination found 5/5 strength in Plaintiff's upper extremities (Tr. 276, 298), and reported that "[t]here are no obvious findings that would indicate additional issues worthy of permanent restrictions or limitations." (Tr. 299). Moreover, the ALJ appropriately discounted Dr. Brunson's diagnosis of "neuropathic pain disorder[,]" by noting that Dr. Pilch was provided a normal EMG/NGV of the upper extremities (Tr. 268) and that a nerve conduction study performed by Dr. Kissler only raised a question of mild neuropathy. (Tr. 27). Further, recent tests did not show any evidence of radiculopathy. (Tr. 269). The ALJ also appropriately credited the expertise of Dr. Pilch, a neurologist and discounted the opinion of Dr. Brunson, who is only a family practitioner. *See* 20 C.F.R. § 404.1527(c); § 416.927(c); *see also* (Tr. 396, Dr. Brunson, referring to Dr. Pilch, stating "[t]here is really no other neurologist I would want him to see.").

Further, the ALJ did not credit Dr. Brunson's opinion because it was inconsistent with the claimant's own testimony. (Tr. 27). Claimant reported on several occasions that he was out of town and additionally he testified that he traveled out of town to New Jersey by car on two occasions. (Tr. 27). The ALJ appropriately found that these types of activities directly contradict the significant limitations Dr. Brunson imposed on claimant's ability to sit, bend, and stoop. (Tr. 27-28). The Court notes that these isolated instances by themselves cannot support a finding that claimant is not disabled but may inform the credibility analysis when considered with other relevant evidence. Further, while Dr. Brunson indicated that claimant would require a cane, multiple treatment notes show that the claimant was not using a cane when attending

12

appointments. (Tr. 26, 358, 360). The ALJ also noted that the claimant did not have to get up and move around every fifteen to twenty minutes during the hearing. (Tr. 27).[4]

Thus, Dr. Brunson's opinion is inconsistent with substantial evidence, and the ALJ did not err in failing to accord it controlling weight.

Plaintiff also argues that the ALJ erred in assigning great weight to the opinions of Drs. Chastain and Van Slooten, non-examining state medical agency consultants. Plaintiff correctly points out that the opinions of non-examining consultants, standing alone, are "not enough to constitute substantial evidence." (Pl. Br. 13) (citing *Radford v Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Here, however, the ALJ did not solely rely upon the opinions of the non-examining consultants, but considered them in addition to the rest of the evidence in the record. (Tr. 25-29). Further, the Fourth Circuit has held that "the testimony of a nonexamining physician can be relied upon when it is consistent with the record." (*Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)).

Here, the ALJ relied upon the opinions of Drs. Van Slooten and Chastain because "both physicians articulated a rationale in support of their respective opinions which summarizes medical evidence" and "[d]iagnostic tests and physical examinations [were] consistent with both opinions." (Tr. 28). Both Dr. Van Slooten and Dr. Chastain found that Plaintiff could both stand and sit for about 6 hours in an 8-hour day. (Tr. 287, 320). Dr. Van Slooten noted that examinations of Plaintiff showed no evidence of radiculopathy, demonstrated only mild cervical and lumbar degenerative changes, and revealed normal strength, bulk, and tone. (Tr. 287). Dr. Chastain noted that Plaintiff retained 5/5 strength in his extremities, full range of motion in his

---

[4] Claimant argues that the ALJ inappropriately considered this evidence. First, the Court finds that if consideration of such evidence was inappropriate, it was harmless. The Court notes that the ALJ confined his discussion of this evidence to a single sentence of a four page, single spaced analysis of the weight he gave to the medical opinions.

13

lower extremities, and further noted that an X-ray of Plaintiff's spine showed only mild disc space narrowing. (Tr. 320). In his decision, the ALJ summarized the medical evidence that corroborates and substantiates these opinions and Plaintiff did not endeavor to contradict this specific finding. Accordingly, the opinions of Drs. Van Slooten and Chastain are consistent with the record and supported by substantial evidence, and the ALJ did not err in according them great weight.

## V. DECRETAL

The final decision of the Commissioner conforms to the applicable law and is supported by substantial evidence. **IT IS**, **THEREFORE**, **ORDERED**, that the Commissioner's decision is hereby **AFFIRMED**. Plaintiff's Motion for Summary Judgment (Doc. 7) is **DENIED**. The Defendant's Motion for Summary Judgment (Doc. 10) is **GRANTED**.

Signed: August 25, 2015

Richard L. Voorhees
United States District Judge

14